PIERSON *v.* BAILEY PRODUCTS CO.

1. Automobiles—Statutes—Private Driveways—Stopping.

The purpose of the statute requiring the driver of a vehicle on a private driveway to come to a full stop before entering a public highway is to require a timely stop before entry upon the travelled portion of the highway (1 Comp. Laws 1929, § 4713).

2. Same—Crossing Public Highway—Negligence.

It is an act of negligence for one to drive across a public highway in the face of approaching traffic coming in such proximity and at such a rate of speed as plainly jeopardizes the safety of the occupants of either car.

3. Same—Entering Public Highway from Private Driveway—Negligence.

In action for death of occupant of car driven from private driveway into public highway, record conclusively disclosed driver of car, in not observing defendant's truck approaching on public highway before entering upon travelled portion thereof and then in entering upon travelled portion of highway in front of defendant's truck, was guilty of negligence proximately causing death of plaintiff's decedent (1 Comp. Laws 1929, § 4713).

4. Negligence—Contributory Negligence—Negligence Imputed to Deceased Passenger.

Contributory negligence of driver of car on private driveway who failed to observe defendant's truck approaching on public highway and drove onto travelled portion of highway in front of it was imputable to occupant of car so as to bar recovery for occupant's death, resulting from collision, from truck owner (1 Comp. Laws 1929, § 4713).

5. Appeal and Error—Negligence—Contributory Negligence—Questions Reviewable.

Whether or not defendant's truck driver was negligent as alleged in action for death of occupant of car is not decided where driver of such car was held guilty of contributory negligence as a matter of law.

---

Function of court and jury on the question of contributory negligence, see 2 Restatement, Torts, § 476.

Standard of conduct required of plaintiff, see 2 Restatement, Torts, § 289 and comment (e) and § 475.

Appeal from Ingham; Carr (Leland W.), J. Submitted April 17, 1941. (Docket No. 81, Calendar No. 41,487.) Decided June 2, 1941.

Case by Mabel M. Pierson, administratrix of the estate of Luther E. Pierson, deceased, against Bailey Products Company, a Michigan corporation, for injuries resulting in the death of plaintiff's decedent, caused by an automobile collision. Verdict and judgment for plaintiff. Defendant appeals. Reversed.

*Harry H. Partlow,* for plaintiff.

*Shields, Ballard, Jennings & Taber,* for defendant.

NORTH, J. Luther E. Pierson came to his death as a result of an automobile collision March 22, 1939, while he was an occupant of a Chevrolet coach owned and operated by his brother, Howard Pierson. The other motor vehicle involved in the accident was a Ford truck owned by defendant and being driven by its employee, Lloyd Smith. The plaintiff in this case is the administratrix of the estate of Luther E. Pierson, who died seven hours after the accident. On trial before a jury plaintiff obtained a verdict for $2,500 and judgment was entered thereon. Defendant has appealed.

At the close of proofs defendant moved for a directed verdict on the ground, among others, that the driver of the Pierson car was guilty of contributory negligence imputable to plaintiff's decedent. Decision of this motion was withheld and reconsidered on motion for judgment *non obstante veredicto.* The trial court denied this motion. If such denial was erroneous, it is controlling of the out-

come of this appeal; and we therefore confine the statement of facts to such as are pertinent to this issue.

The accident happened in midforenoon of a clear day. Vision was unobstructed and the gravel road at the point of accident in good condition, "dry and not slippery." The farm residence of Howard Pierson is located on the north side of this east and west gravel State highway M-104. The total width of the highway is 66 feet, and the gravel road bed is 24 feet wide. At the time the two brothers entered the Chevrolet coach, it was headed north in the driveway at the easterly side of this farm residence. Howard Pierson, hereinafter referred to as the driver, backed the car south and east for the purpose of turning it around and driving forward, instead of backing, into the highway. The automobile was brought to a stop somewhat easterly of the private driveway and just northerly of the north line of the highway. At the point where the driver shifted his gear from reverse to low the automobile was facing slightly south of west. Before or at the time of shifting into low gear the driver made an observation for vehicles coming from the east on the highway, but he saw none. Uncontradicted testimony discloses a range of vision to the east of at least 1,000 feet. His testimony as to driving his car and attending circumstances is as follows:

"[Direct examination] We got in the car and backed up, and I backed it up and I threw the clutch out of reverse and looked and the road was clear and I shifted into low and went into the road, * * * and I had my foot on the brake as I went down [the slight grade] in the road and I looked and there was a truck down there and I stepped on the gas and swung way over to the other side and it was coming at a good rate of speed * * * and when I got

out here in the road I heard a car blow and coming like this, and I looked after that and he was down to the east end. * * * As I entered the road I looked to the right. * * * I could see 40 rods up there [to the east] from where I was. I had looked in that direction and saw no car coming and I started in low to the road. * * * The front end of my car when I heard the horn blow was possibly in the center of the road. After I heard the horn blow I swung way over to my right and gave him the whole road, that is, I headed to the right-hand side. When the horn blew the car was at the east end of the rail [approximately 200 feet to the east], that is, to the east of the guard post at the east, I went clear on my side of the road. * * * I could not see who the driver was, it hit my car right in behind, back of the front fender, running board, on the left-hand side. My car was headed east when I was hit. * * * After I regained consciousness I was at the scene of the accident, I saw where my car was setting at that time. It was in the bank headed south, that is, the front part of my car was in the bank headed to the south, the truck was right against it, the right-hand bumper was against the left-hand front wheel. * * * My car was not injured in the front portion, the truck struck my car at the front fender where it coupled on the running board.

"*Q.* What did it do, what did the impact do to the seat?

"*A.* Sprung one of them out, the left one was over where the right [front] seat should be, both seats tore out of the car. * * *

"The frame set over about two feet to the right. I saw the truck before it struck and I knew we were going to hit. * * * [Cross-examination] We were going to go out of the driveway and turn to the east on M-104. * * * We drove in the road and were headed east.

"*Q.* I believe you stated that the truck struck you on the side, didn't you?

"*A.* It did and it swung to the south side of the road. * * *

"*Q.* And you were going east when you were struck?

"*A.* I mean the truck was going west.

"*Q.* The truck was going west?

"*A.* Yes, and I was headed east.

"*Q.* And yet the truck came in and struck you on the side?

"*A.* On the side of the car, yes.

"*Q.* Are you sure about that?

"*A.* I know it, it swung to the south. I saw my car * * * after the accident, * * * both the car and the truck set there. My car was headed in a south-easterly direction. * * *

"*Q.* Which way was the truck headed?

"*A.* It was headed to the southwest, the truck, you might say west.

"*Q.* In relation to the westerly boundary line, the boundary of the driveway going into your farm home, where was the truck and where was your car situated when they came to a stop? * * *

"*A.* It was east of that. * * *

"*Q.* How far east?

"*A.* About opposite of the post [meaning a guide post on the east side of the driveway]. * * * Yes, east on the south side of the road. * * *

"*Q.* When you got out in this road, when your car got in the road, when did you first see or observe this truck in any way?

"*A.* When we were in the road about the center-way, I seen that truck down to the rail, the east end of the guard rail. * * *

"*Q.* How far was it from where your car was when you observed it?

"*A.* Probably a couple hundred feet. My attention was attracted to it when he blew his horn down there, that was the first I observed it when the horn was blown, I turned to my left at that time. I was still in low gear, I had not shifted gears.

"*Q.* When you observed this truck coming, as you say, you were partly across the center of the highway and turned to your left, what did you do if anything?

"*A.* I swung over to the south edge of the road.

"*Q.* Did you do anything else?

"*A.* No, I stepped on the gas to swing over to the south side of the road. * * * There is a mail box * * * across from my driveway, it was there at the time of the accident. The mail box * * * is about south of the drive, I would say right across the road, about the center of my driveway. My car was east of the mail box when it came to a stop. I could not say how far, it was some distance. * * * Probably 10 or 15 feet east. * * * When my car and the truck finally came to a stop they were on the south side of the highway with their front ends up against the bank. * * *

"*Q.* Mr. Pierson, * * * as you say, you were, attempting to turn to your left, how far had you gone in the highway when you were hit?

"*A.* Do you mean on the gravel?

"*Q.* Yes.

"*A.* Oh, it might be the length of the car on the gravel, I went a little better than twice the length of the car since I started.

"*Q.* That is, since you backed up into this turn around?

"*A.* A little better than twice the length of the car.

"*Q.* And how much time elapsed from the time you saw this car or heard the horn until you were struck?

"*A.* Well, not very long, I could not tell you just how long. * * * Longer than two seconds probably. * * *

"*Q.* Was your car moving all of the time?

"*A.* Yes. * * * Not very fast, in low gear. * * * When I saw the truck coming my front wheels were in the center of the road and the rest of the car was

practically to the north. The truck was coming on his side when I saw it.''

Defendant's truck, approaching from the east, was travelling at a rate of 30 to 35 miles per hour, possibly at a higher rate of speed. The undisputed testimony is that the truck, just prior to the impact, angled to its left on the southerly portion of the highway, in an effort to avoid collision. The accident happened south of the center line of the travelled portion of the highway. From uncontradicted testimony of the circumstances attending this accident and from physical facts, such as the location of the automobiles after the accident and the portion of the Pierson car that received the impact as shown by photographic evidence, as well as the resulting damage, it conclusively appears that the collision occurred not later than while the Pierson car was still in the operation of turning to the east. Oral testimony of Howard Pierson, which is possibly somewhat to the contrary, is wholly nullified by the physical facts. There is no question but that defendant's truck must have been in plain sight when the Pierson car entered the travelled portion of the highway; but the driver of that car, under his own testimony, did not observe the approaching truck until his car was about at the center line of the gravel. The statute (1 Comp. Laws 1929, § 4713 [Stat. Ann. § 9.1581]) requires that the driver of a vehicle entering a public highway from a private driveway shall come to a full stop before entering such highway. Possibly the testimony of Howard Pierson, construed most favorably to plaintiff, might indicate compliance with this statutory provision; but the obvious purpose of the statute is to require a timely stop before entry upon the travelled portion of an intersecting highway. But wholly apart

from the statute and wholly apart from the question as to whether there was compliance with the statutory requisite, it is an act of negligence for one to drive across a public highway in the face of approaching traffic coming in such proximity and at such a rate of speed as plainly jeopardizes the safety of the occupants of either car. This record conclusively discloses that the driver of the Pierson car was negligent in not observing the approaching truck before the Pierson car entered upon the travelled portion of M-104 and until too late to avoid the accident. In that particular, at least, the driver of the Pierson car was guilty of negligence which was a proximate cause of this accident. Such negligence or contributory negligence is imputable to plaintiff's decedent and bars recovery in this case. *Rasmussen* v. *McEachron,* 274 Mich. 200.

This is not a case where a driver saw an approaching vehicle on an intersecting highway and mistakenly judged he could safely pass in front of it. And it should be noted in the instant case, as was said in *Cramer* v. *Brictson,* 286 Mich. 224, 228: "the case was not tried on such evidence or such a theory."

In view of the foregoing, it is not requisite to decision that we should pass upon the alleged negligence of the driver of defendant's truck; nor need we give consideration to other contentions of appellant.

The judgment entered in the circuit court is reversed. Appellant will have costs of both courts.

SHARPE, C. J., and BUSHNELL, BOYLES, CHANDLER, WIEST, and BUTZEL, JJ., concurred. McALLISTER, J., did not sit.